[Cite as *State v. McKinney*, 2026-Ohio-2742.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. Nos. 2025-CA-56; 2025-CA-63 |
| Appellee | : | |
| | : | Trial Court Case Nos. 24-CR-0656; 25-CR-0437; 24-CR-0356; 25-CR-0217 |
| v. | : | |
| | : | |
| DAVID MCKINNEY | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 17, 2026, the judgments of the trial court in Clark C.P. Nos. 24-CR-0356 and 25-CR-0217 are vacated in part, the judgment in Clark C.P. No. 25-CR-0437 is reversed in part, and the matter is remanded for resentencing in Clark C.P. No. 25-CR-0437 consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

OPINION

CHRISTOPHER J. PAGAN, Attorney for Appellant
JOHN M. LINTZ, Attorney for Appellee

HUFFMAN, J.

{¶ 1} In these consolidated cases, David McKinney appeals from judgment entries of conviction on three counts of menacing by stalking, two counts of violating a protection order, and one count of unlawful restraint. Because duplicity in the indictment and in the charge are demonstrated, McKinney's protection order violation convictions are vacated. The matter is remanded for a resentencing hearing limited to the proper imposition of post-release control in the sentence on the felony menacing by stalking offense.

**Facts and Procedural History**

{¶ 2} Over a course of many months, McKinney was indicted as follows: in May 2024, on two counts of menacing by stalking and one count of violating a protection order (Clark C.P. No. 24-CR-0356); in August 2024, on one count of abduction (Clark C.P. No. 24-CR-0656); in March 2025, on two counts of menacing by stalking and one count of violating a protection order (Clark C.P. No. 25-CR-0217); and in June 2025, on one count of menacing by stalking (Clark C.P. No. 25-CR-0437). The victim in each offense, S.P., was McKinney's former live-in girlfriend.

{¶ 3} The cases progressed to a consolidated five-day jury trial on June 16, 2025, where 10 witnesses testified for the State, and McKinney called six witnesses and testified himself. At the conclusion of the State's case, McKinney moved for acquittal, and the trial court granted the motion as to two counts of menacing by stalking, one in Clark C.P. No. 24-CR-0356 and the other in Clark C.P. No. 25-CR-0217. The jury returned guilty verdicts on

2

three felonies: two counts of violating a protection order in Clark C.P. Nos. 24-CR-0356 and 25-CR-0217 and menacing by stalking in Clark C.P. No. 25-CR-0437. The jury also found McKinney guilty of three misdemeanors as lesser-included offenses of the counts charged in his indictments: two counts of menacing by stalking in Clark C.P. Nos. 24-CR-0356 and 25-CR-0217 and one count of unlawful restraint in Clark C.P. No. 24-CR-0656.

{¶ 4} Disposition occurred on July 29, 2025. The court imposed 18 months on the protection order violation in Clark C.P. No. 24-CR-0356, 24 months on the protection order violation in Clark C.P. No. 25-CR-0217, and 18 months for menacing by stalking in Clark C.P. No. 25-CR-0437. The court ordered the felony sentences to be served consecutively to each other for a total term of 60 months; local jail time was imposed for the misdemeanor offenses, to be served concurrently with the felonies. Only the felony offenses are at issue in this timely appeal.

## Assignments of Error and Analysis

### I.

{¶ 5} McKinney asserts two assignments of error. In his first assigned error, he argues that his convictions for violating a protection order were contrary to law for two reasons. First, he claims that the State improperly indicted the offenses as continuing course of conduct crimes, eliciting evidence of multiple contacts between him and S.P. without identifying the two specific contacts that constituted the crimes charged; according to McKinney, this was "duplicitous twice over: as charged and as presented at trial." Put differently, McKinney argues that evidence of over 100 protection order violations was introduced, and the state failed to identify the specific act it alleged was charged in the indictment. McKinney asserts that such a duplicitous prosecution was contrary to law, because it violated Crim.R. 8(A), his right to be charged by a grand jury, his right to know

3

the accusations against him, his right to juror unanimity, and his right to avoid double jeopardy.

{¶ 6} Because defense counsel did not raise the issue of duplicity before the trial court, McKinney argues that plain error analysis applies. He claims that the duplicity affected the trial outcome, because he contested specific alleged violations, "but the indictment, . . . trial presentation, and verdict failed to identify [two] specific acts that violated the statute." He asserts that the trial court "committed serious constitutional error by authorizing course-of-conduct charge[s] and theory, that [the] error was plain and obvious, and it denigrated [his] substantial rights by affecting the trial outcome." McKinney does not appear to argue that he could not have been convicted, as a result of his conduct, of the violation of a protection order. Instead, he claims that the presentation of evidence and the indictment did not identify the specific act in each count that the jury was to consider and that he was to defend against.

{¶ 7} "Issues regarding duplicity first appeared in Ohio in the case of *Barnhouse v. State*, 31 Ohio St.3d 39 (1876)," to which McKinney directs our attention. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 133 (12th Dist.) (Ringland, J., concurring in part and dissenting in part). Barnhouse was indicted and tried on one count of incest, but the evidence at trial established that his incestuous behavior occurred continually between 1865 and 1876. *Id.* After noting that incest is a single-act crime, the Ohio Supreme Court reversed Barnhouse's conviction, finding that an "'indictment for incest which charges the criminal act [had] been committed continuously through a specified period of years, is to be regarded as charging several distinct offenses, and is bad for duplicity.'" (Bracketed text in original.) *Id.*, quoting *Barnhouse* at 39.

4

**{¶ 8}** "The prohibition against duplicity serves two key purposes: it protects an accused's Sixth Amendment right to receive notice of the nature of the charge and prevents confusion regarding the basis for the verdict." *State v. Jones*, 2026-Ohio-68, ¶ 29 (12th Dist.). "Although most courts addressing this issue treat the concept as a single doctrine, duplicity manifests in two distinct forms: (1) duplicity in the indictment, and (2) duplicity in the charge." *Id.*, citing *Blankenburg* at ¶ 130.

**{¶ 9}** Duplicity in the indictment is more common and "occurs when two or more distinct offenses are alleged in a single count." *Id.* at ¶ 30, citing *Blankenburg* and *State v. Bowling*, 2015-Ohio-360, fn. 2 (12th Dist.). "The rules of Criminal Procedure prohibit this type of duplicity." *Id.*, citing Crim.R. 8(A).[1] Duplicitous charging, on the other hand, occurs "when an indictment alleges only one criminal act, but the State introduces evidence of multiple incidents at trial to prove that single charged offense." *Jones* at ¶ 31, citing *Blankenburg* at ¶ 132.

**{¶ 10}** Ohio courts have permitted course-of-conduct prosecutions in cases involving multiple acts of sexual abuse against children, and the State relies upon two such cases, directing our attention first to *State v. Workman*, 2017-Ohio-8638 (12th Dist.). *Workman* determined that "[w]hen the state is faced with a victim of continual sexual abuse who does not have a distinct memory of details associated with numerous occasions, it is within the confines of due process to permit the state to charge the accused with at least one criminal offense for a specific time period." *Id.* at ¶ 46. *Workman* involved two victims and multiple

---

1. "Two or more offenses may be charged in the same indictment . . . in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A).

instances of childhood sexual abuse over periods of time, and without any analysis or distinction, the State asserts that "the same logic applies to a case like this one."

{¶ 11} In *Bowling*, 2015-Ohio-360 (12th Dist.), to which the State also directs our attention, the court addressed whether multiple acts can be charged as a single offense under a continuous course of conduct theory, and it rejected a duplicity argument. Bowling was charged with gross sexual imposition and rape as ongoing courses of criminal conduct. *Id.* at ¶ 2. He moved to dismiss the indictment, in part, based on duplicity. *Id.* at ¶ 3. The "trial court found that the Twelfth District had clearly held that indictments involving child sex abuse cases are not duplicitous." *Id.* at ¶ 4.

{¶ 12} On appeal, Bowling argued that duplicity applied and that "his rights, including notice, jury unanimity, and protection against double jeopardy were violated." *Id.* at ¶ 18. It was significant to the court in *Bowling* that each count in the indictment "contained only one offense," and the "victim described the approximate time frame, location, and sex act for each incident as described in the bill of particulars." *Id.* at ¶ 22. The court concluded, "[W]e are not convinced that the manner in which Bowling was indicted or the evidence that was presented prejudiced him in any way." *Id.*

{¶ 13} The Twelfth District further found that "the state delineated between the count of gross sexual imposition and rape such that Bowling was provided adequate notice of the charges against him." *Id.* at ¶ 23. The court found that "[t]he indictment included the specific and separate time frame in which the sex offenses allegedly occurred," and "the bill of particulars contained a detailed basis for each count in the indictment," including "the specific location, the sex act that occurred, and the victim's name." *Id.* at ¶ 23. Regarding double jeopardy, the court found that "the indictment differentiated the counts by type of offense and time period, and thus Bowling [was] protected from subsequent prosecution on the same

6

conduct." *Id.* at ¶ 25. Presiding Judge Ringland "dissent[ed] because the majority [did] not follow the Ohio Supreme Court case *State v. Gardner*, [2008-Ohio-2787], to ensure the jury returned a unanimous verdict," and "because the majority improperly allow[ed] a continuing course of conduct as an element in the indictments involving sex crimes." *Id.* at ¶ 34 (Ringland, P.J., concurring in part and dissenting in part).

{¶ 14} *Gardner* addressed "whether jury unanimity is required in 'multiple acts' cases – a theory similar to that of duplicity in the charge." *Jones*, 2026-Ohio-68, at ¶ 32 (12th Dist.). In *Gardner*, "the Court explained that if a single offense can be committed in more than one way, the jury must unanimously agree on the defendant's guilt, but it does not have to unanimously agree on the *means* the defendant used to commit the crime if substantial evidence supports each of the 'alternative means.'" *Id.*, quoting *Gardner* at ¶ 49. Conversely, if the State alleges that the defendant engaged in distinct "*acts*, any one of which could constitute the crime charged," then "the State must elect the particular act it will rely on for conviction, because the jury must be unanimous that the State proved the defendant committed that particular underlying act beyond a reasonable doubt." *Id.*, citing *Gardner* at ¶ 50. *Gardner* further noted that "[t]o ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt."[2] (Cleaned up.) *Gardner* at ¶ 50.

{¶ 15} After the Twelfth District's decision in *Bowling*, in *Jones*, the court considered duplicity in the charge and whether the jury's verdict was unanimous with respect to

---

2. This Court recently considered *Gardner* in the context of a duplicity challenge involving one count of tampering with evidence by way of alternative means, as opposed to multiple acts. *State v. Smith*, 2025-Ohio-679, ¶ 74 (2d Dist.) ("Because the State failed to present sufficient evidence on each basis . . . for the tampering with evidence charge . . . , we conclude that Smith's conviction for tampering with evidence rises to the level of plain error.")

7

kidnapping convictions. *Jones* at ¶ 31. *Jones* applied de novo review, finding that Jones had preserved the issue for appeal. At trial, the State alleged that Jones sexually abused Beth on three occasions (Counts 10, 11, and 12) and Chloe on three occasions (Counts 6, 7, and 8). Jones was indicted for kidnapping Chloe and Beth (Counts 5 and 9 respectively) and for gross sexual imposition (GSI) against each of them. The court merged Count 10 into Count 9 and Count 6 into Count 5, and it sentenced Jones for the kidnapping charges. *Id.* at ¶ 33.

{¶ 16} In its closing argument, the State had asserted that Jones committed kidnapping each time the alleged incidents of sexual abuse occurred, and Jones claimed on appeal "that this amounts to duplicity because the State presented . . . [six] possible acts for the [two] kidnapping counts." *Id.* at ¶ 33-34. In response, the State argued that duplicity did not apply to the kidnapping convictions, "because it could have charged Jones with a separate count of kidnapping corresponding to each sex offense and that its decision to charge only one count per victim ultimately benefitted Jones." *Id.* at ¶ 35.

{¶ 17} The Twelfth District found that the "relevant issue [was] not whether a jury would have found Jones guilty of additional offenses, but whether the State improperly presented multiple acts in support of a single charged offense." *Id*. at ¶ 36. Citing *Gardner*, it was significant to the court in *Jones* that the State had failed to elect the specific act upon which it relied for a conviction and that the court had not instructed the jury that it must unanimously agree on the same underlying act beyond a reasonable doubt. *Id. Jones* concluded that there was "no way to verify the jury unanimously agreed that the State proved the defendant committed a single, particular act of kidnapping beyond a reasonable doubt," and that the kidnapping counts "suffered from duplicity in the charge because the State did not prove Jones committed a particularized act of kidnapping sufficient to verify juror

8

unanimity." *Id.* at ¶ 36-37. The court reversed and vacated the judgment as it related to Jones' convictions for kidnapping Beth and Chloe (Counts 5 and 9). *Id.* at ¶ 87.

{¶ 18} Finally, and further instructive, an indictment was found to be duplicitous in *State v. Jackson*, 2011-Ohio-5920, ¶ 25, 48 (8th Dist.), citing *Gardner*, 2008-Ohio-2787, at ¶ 48-50, and *State v. Ficklin*, 2009-Ohio-6103, ¶ 3 (8th Dist.) (duplicity in an indictment not fatal if the State chooses either the count or charge within the count upon which it will rely). Jackson was convicted of felonious assault, domestic violence, and child endangering, and he argued that his indictment failed to specify which of four instances of abuse constituted the bases of the charges. *Id.* at ¶ 19. In the absence of objection to the form of the indictment, the court applied plain error analysis. *Id.* at ¶ 20.

{¶ 19} Jackson argued that the "State's failure to correlate a particular charge with a particular event meant that the jury was left to decide for itself which incident applied to which count and render its verdict based on its own speculation, with the result that he was deprived of his right to a unanimous jury verdict." *Id.* at ¶ 38. The Eighth District found that "Jackson's due process rights were violated where neither the indictment, bill of particulars, nor the jury instructions apprised him of what occurrences formed the bases of the charges he faced, leading to the possibility of lack of unanimity, and failing to protect him from double jeopardy." *Id.* at ¶ 48. The court further found that "the State's attempt to cure the due process violations by delineating in closing argument what acts were associated with each count was unsuccessful." *Id.*

{¶ 20} As McKinney asserts, when an appellant fails to raise a duplicity challenge to an indictment or charge before the trial court, the issue is subject to plain error review on appeal, a demanding standard. Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91 (1978),

9

paragraph two of the syllabus. "In order to constitute plain error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights." *State v. Mobley*, 2016-Ohio-4579, ¶ 30 (2d Dist.), citing *State v. Norris,* 2015-Ohio-624, ¶ 22 (2d Dist.), and Crim.R. 52(B).

**{¶ 21}** Here, the record reflects that, in accordance with R.C. 3113.31, S.P. obtained an ex parte domestic violence civil protection order on November 28, 2023, effective until November 28, 2028. It was served on McKinney on December 8, 2023. McKinney's indictment in Clark C.P. No. 24-CR-0356 alleged that, as "a continuous course of conduct from on or about December 8, 2023[,] to on or about May 3, 2024," he violated the protection order. The indictment in Clark C.P. No. 25-CR-0217 alleged that. "as a continuous course of conduct from on or about May 3, 2024[,] through on or about February 24, 2025," McKinney violated the protection order.

**{¶ 22}** The comprehensive protection order prohibited McKinney from entering or interfering with S.P.'s residence, school, business, place of employment, including the buildings, grounds, and parking lots at these locations. It required McKinney to stay away from S.P. and not be present within 500 feet of her or any place McKinney knew or should have known she was likely to be. Further, if McKinney were to come into contact with S.P. in any public or private place, he was required to immediately depart. The order included encounters on public and private roads, highways, and thoroughfares. Although McKinney requested bills of particular in Clark C.P. Nos. 24-CR-0356 and 25-CR-0217 for all occurrences alleged to constitute criminal behavior, which could have apprised him of the specific acts alleged, none were provided by the State.

**{¶ 23}** At trial, S.P. testified that she began a relationship with McKinney in August 2022. Having been living with her grandparents, S.P. moved into McKinney's home in June

10

2023. While S.P. was living with her grandparents, she recalled seeing McKinney "on the road" one time. She ended their relationship on November 10, 2023, and moved back to grandparents' home. McKinney's conduct on that day led to the abduction charge.

{¶ 24} After McKinney was served with the protection order, S.P. began to see him "on the routes, the places that I go to, and at the gym." She testified regarding a timeline she had kept, from the beginning of their relationship until February 2025, detailing countless specific times and locations where she had seen McKinney, sometimes more than once in a single day, including on her way to and from work and at multiple places McKinney knew her to frequent. She installed cameras in her vehicle and at her home and recorded McKinney. S.P. stated that, after obtaining the protection order, she saw McKinney more than anyone else in her life.

{¶ 25} Sergeant Denise Jones of the Clark County Sheriff's Office testified that she met with McKinney in May 2024 and that he provided her with a 322-page handwritten document that he described as a "love letter slash apology letter slash journal" addressed to S.P., with entries from November 15, 2023, until May 4, 2024. After comparing the journal to S.P.'s timeline, Jones testified that the entries suggested that there were occasions where S.P. was unaware that she was being observed by McKinney.

{¶ 26} In his lengthy testimony, McKinney denied ever violating the protection order and stalking S.P. He stated that he fully understood the terms of the order, and that if he saw S.P. at any location, he left immediately.

{¶ 27} As McKinney asserts, pursuant to R.C. 2903.211(A), "engaging in a pattern of conduct" is an element of menacing by stalking. R.C. 2919.27(A)(1), on the other hand, criminalizes recklessly violating the terms of a protection order but does not contemplate a course or pattern of conduct as an element of the offense. "An offense is committed when

11

every element of the offense occurs." R.C. 2901.13(E). The record reflects that the State adduced evidence of multiple individual violations of the protection order, but the State did not specify the act alleged in each protection order violation charge.

{¶ 28} In the State's closing argument, the prosecutor stated that the menacing by stalking offenses and the protection order violations both occurred as a pattern of conduct. The prosecutor argued, in part, regarding the protection order violations:

> That's why the protection order specifies. He does not have a right to be anywhere and everywhere she is. That's why the protection order specifies, you may not go places where you know the victim is likely to be including public roads and highways. . . .
>
> Instead, what he's doing is showing up everywhere she is deliberately. It is a pattern of conduct. And again, I only had to show you two incidents during this time period. We've got 100 to 200 incidents during this time period. . . . It's a pattern of conduct.

Trial Tr. 1076.

{¶ 29} In instructing the jury on the protection order violations, the court stated:

> If you find that the State has proven all the essential elements of these offenses beyond a reasonable doubt, your verdict must be guilty. . . . If your verdict is guilty on one or both of these offenses, you will continue your deliberations to determine whether the State has proven beyond a reasonable doubt that the Defendant violated the protection order while committing a felony offense.

Id. at 1091.

12

{¶ 30} Based on the foregoing, the record establishes both duplicity in the indictment and duplicity in the charge. The indictment was facially duplicitous because it alleged a continuing course of conduct as an element of an R.C. 2919.27(A)(1) violation, a single-act offense.

{¶ 31} Regarding duplicity in the charge, the State, by its own admission, presented evidence of up to 200 incidents of protection order violations. S.P.'s relevant testimony spanned from the effective date of the protection order in December 2023 to February 2025. There was no bill of particulars in either case charging a protection order violation that advised McKinney of the specific act alleged in each protection order violation charge, and the jury was not instructed that they had to agree on what specific conduct by McKinney constituted the protection order violations. The State's reliance on *Workman* and *Bowling* involving ongoing sexual abuse of children is misplaced as such distinct circumstances are not presented in this case. *Gardner* requires that the State elect the particular criminal act that it will rely on for conviction or that the jury be instructed that they all must agree which underlying criminal act has been proven beyond a reasonable doubt, neither of which happened here. Based on the foregoing, plain error is demonstrated, and this portion of McKinney's assignment of error is sustained. The trial court's judgment is vacated as to the two felony protection order convictions in Clark C.P. Nos. 24-CR-0356 and 25-CR-0217.

{¶ 32} In the second portion of McKinney's first assignment of error, he argues that his protection order violation convictions are contrary to law because they were subject to merger. He claims that it "was multiplicitous" to allege course-of-conduct protection order violations across two counts. Having vacated McKinney's protection order convictions, analysis of the merger argument in McKinney's first assignment of error is moot.

II.

{¶ 33} In his second assignment of error, McKinney argues that the "trial court committed sentencing error" for three reasons. He first claims that the State relied on the conduct constituting menacing by stalking to establish that the protection order violations occurred while he committed a felony, and that there was one animus, such that the felony menacing by stalking offense was subject to merger with the protection order violations. Having vacated the protection order convictions, we need not address whether merger applied.

{¶ 34} Second, McKinney claims that it was contrary to law to sentence him consecutively for the protection order violations. Again, analysis of this argument has been rendered moot by our disposition of the first assignment of error.

{¶ 35} Finally, McKinney claims that the court pronounced a maximum two-year term of post-release control [PRC] at disposition but imposed a maximum eight-year term in the judgment entry of conviction. The State concedes that the judgment entry of conviction was inconsistent with the advisement at disposition but argues that McKinney "was consistently informed that [PRC] was merely optional and at the discretion of the Parole Authority." The State requests, if we find error, that the matter be remanded for the limited purpose of correcting the judgment entry of conviction.

{¶ 36} At disposition, the court advised McKinney:

Upon your release from prison, you could be placed on [PRC] for up to 2 years. If you violate that, there could be sanctions. The duration of it could be increased. . . . You could be sent back to prison for each violation for up to a total of one half of your original sentence.

. . .

14

. . . I believe that is a decision that will be made by the parole authority upon your release but I would like to make it a matter of record that I strongly recommend that upon your release that you are placed on 2 years of [PRC] . . . [and] that if you violate the terms of [PRC] you could be sent back to prison for each violation up to 9 months but after several violations no more than half of your original prison sentence which will be 2 and a half years.

Disposition Tr. 32-33.

{¶ 37} The judgment entry of conviction states in part: "The court notified the defendant that PRC is optional in this case for up to two (2) years." The entry further provides: "The Court further notified the defendant that one of the following sanctions could be imposed on him if he violates PRC: (1) the duration of PRC may be increased up to a maximum term of eight years . . . ."

{¶ 38} Ohio law requires that, at a sentencing hearing, if the court determines a prison term is necessary for a felony of the fourth degree, it must notify the offender that he or she may be supervised pursuant to R.C. 2967.28 after leaving prison. R.C. 2929.19(B)(2)(e). For the fourth-degree felony offense of menacing by stalking, McKinney is subject to post-release control for two years upon his release from prison if the parole board finds that a period of post-release control is necessary. R.C. 2967.28(C). Further, "the period of a prison term that is imposed as a post-release control sanction under this division shall not exceed nine months, and the maximum cumulative prison term for all violations under this division shall not exceed one-half of the definite prison term that was the stated prison term originally imposed on the offender as part of this sentence." R.C. 2967.28(F)(3). Given our resolution of McKinney's first assignment of error and the imposed sentence of 18 months on the

15

menacing by stalking count, McKinney is subject to a maximum cumulative prison term of nine months as a post-release control sanction.

{¶ 39} Because the vacation of the convictions substantively alters the sentence, the proper remedy is a new sentencing hearing pursuant to R.C. 2929.191(C), and the re-sentencing is limited to the imposition of post-release control. *State v. Sealey*, 2017-Ohio-338 (11th Dist.) (When the post-release control portion of a sentence is vacated, the resentencing to which an offender is entitled is limited to the proper imposition of post-release control.) This portion of McKinney's assigned error is sustained, and the matter is remanded for a limited resentencing hearing.

## Conclusion

{¶ 40} McKinney's convictions for violating a protection order in Clark C.P. Nos. 24-CR-0356 and 25-CR-0217 are vacated. The trial court's judgment in Clark C.P. No. 25-CR-0437 is reversed in part, and the matter is remanded for a limited resentencing hearing for the proper imposition of post-release control on the felony offense of menacing by stalking.

. . . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.